28346. LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY LIMITED *v.* STUART *et al.*

DECIDED MARCH 20, 1942.   REHEARING DENIED APRIL 3, 1942.

*Jones, Fuller & Clapp, Alex. P. Gaines,* for plaintiff in error.
*T. C. Denmark, T. B. Higdon,* contra.

FELTON, J. ■ The policy sued on provided: "This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, if the interest of the insured be other than unconditional and sole ownership." The Supreme Court has held in answer to a certified question that the policy sued on was an entire one. *Liverpool & London & Globe Insurance Co.* v. *Stuart,* 191 *Ga.* 745 (14 S. E. 2d, 98). To a second certified question the Supreme Court answered that its answer to the first certified question does not preclude us from passing on the question of "de minimis non curat lex." *Liverpool & London & Globe Insurance Co.* v. *Stuart,* 193 *Ga.* 437 (18 S. E. 2d, 681). We do not think the rule which permits a contract against interest less than sole and unconditional ownership applies in this case. When the reason for a rule ceases the rule itself ceases. "The purpose in requiring the insured to have the unconditional and sole ownership of the property insured is to give protection only to those upon whom the loss insured against would inevitably fall except for the insurance, and to avoid taking risks for those whose lack of interest or

whose contingent interest in the property insured might tend to encourage carelessness or wrongdoing in the use or preservation of the property." 29 Am. Jur. 484, § 599. The rule is not applicable in this case under the facts because it can not reasonably be contended that an instrument in the nature of an incumbrance of $58 by conditional-sale contract on goods insured for $7000 would be conducive to wrongdoing or carelessness on the part of the insured with reference to the whole property insured, even taking the value found by the jury as the true value. The amount of the instrument is comparatively but a trifle, and under the circumstances ought not to be noticed by the law. Our conclusion is that the instrument did not void the policy. Even though the outstanding title to a small part of the property bears a relationship to the hazard insured against, the amount is not large enough, comparatively, to be "material" to the risk, because it would not in reason violate the rule supporting the sole and unconditional ownership provision stated above. It would seem preposterous to hold that a policy insuring $3000 worth of listed household and kitchen furniture would be void because there was an outstanding conditional-sale contract on a radio or a kitchen stove or refrigerator in the amount of $58. There would be no more cause for avoidance of the policy for such an insignificant outstanding title than there would be for an insignificant violation of a provision against incumbrances, and it has been held that an incumbrance may be so small as not to be material to the risk. 4 Couch Cyclopedia of Insurance, 3134, § 902. Especially is this true where ·the instrument involved amounts to no more than an incumbrance so far as practical ownership is concerned.

There is another reason why the present policy is not voided by the conditional-sale contract. We have already stated· the basis for the rule supporting the stipulation in a policy providing for avoidance in the absence of unconditional and sole ownership. It will be observed that the reason does not embrace the hazard of an insured's wrong which arises out of a temptation to wrongdoing to pay off an incumbrance by burning the insured property. This hazard is usually provided for by a provision of some kind in the policy against incumbrances. The sole and unconditional ownership clause does not provide against incumbrances. 3 Cooley's Briefs on Insurance, 2191. The present policy provides that that

part of the property sought to be insured which is incumbered by a chattel mortgage will not be considered covered by the policy. A number of Georgia cases have held that the sole and unconditional ownership clause in an insurance policy is violated by a deed to secure debt and a conditional-sale contract. *Conyers* v. *Yorkshire Insurance Co.*, 30 *Ga. App.* 6 (117 S. E. 102); *Springfield Fire & Marine Insurance Co.* v. *Chero-Cola Bottling Co.*, 22 *Ga. App.* 503 (96 S. E. 332); *Peoples Credit Clothing Co.* v. *Old Colony Insurance Co.*, 47 *Ga. App.* 819 (171 S. E. 587); *Orient Insurance Co.* v. *Williamson*, 98 *Ga.* 464 (25 S. E. 560); *Williamson* v. *Orient Insurance Co.*, 100 *Ga.* 791 (28 S. E. 914). The only reason for such a rule, under the sole and unconditional ownership provision, would seem to be that unless otherwise provided the loss falls where the legal title lies. *Randle* v. *Stone*, 77 *Ga.* 501. If a vendor under a conditional-sale contract would bear all or part of the loss, the vendee would not have an insurable interest in his own right as to property, the loss of which the vendor would have to bear. The Georgia cases do not discuss this reason, but it must certainly be the assumed reason back of all the cases on the subject, because but for the principle of losses following title a security deed or conditional-sale contract is merely an incumbrance, so far as ownership of property is concerned, as respects any of the rights of an insurance company under a fire-insurance contract. Certainly the risk of an insurance company would be no greater where a house is incumbered by deed to secure debt than it would be if the house was incumbered by a mortgage if the grantor in the deed had to bear the loss in any event. In this case the conditional-sale contract provides that there should be no rescission or abatement in the purchase price if the property was damaged or destroyed. Since the loss would fall on the vendee, there seems to be no reason why the insureds in this case are not to be considered as the sole and unconditional owners of the property under the sole and unconditional owership provision.

In what we have said we have not intended to apply the law of Georgia to this case so far as mortgages are concerned. We have applied the Georgia law as to conditional-sale contracts because there was no such contract at common law and no statute law of North Carolina is pleaded. It was not error for the court to strike the defense that a part of the property insured was subject to a conditional-sale contract.

■ There is no merit in ground 5 of the amended motion for new trial.

■ The court did not err in admitting the evidence and in refusing to rule out testimony to the effect that Mr. Stuart had tires stored in a warehouse in Atlanta. The evidence was admissible to show, in connection with testimony to the effect that all of the tires were moved from warehouses in Atlanta to Murphy, shortly before the fire, that there were as many tires destroyed as plaintiffs contended, and to refute the contention of the defendant that there was only a small number of tires destroyed by the fire. The testimony as to the value of the tires in Atlanta was not too remote. It was shown that the value was the same in Atlanta as at Murphy, and the tires were in Atlanta only a few months before the fire. (b). The plaintiffs' witness Eagle testified that Mr. Stuart had 100 to 200 tires in witness's garage in Atlanta, and that they were not moved out until March 1939, after the fire. Defendant objected to this evidence, and on the statement by the attorney for the plaintiffs'that the tires would be connected up with the fire the testimony was tentatively admitted. At the conclusion of the evidence defendant's counsel moved to exclude evidence as to tires in Atlanta and the court denied the motion. The court did not err in not ruling out the above evidence for the reason that there was other evidence as to other tires stored in Atlanta which were shown to have been moved to Murphy and put in the building which was destroyed by fire. If the motion had specified the particular evidence at which the motion was directed, so as to put the court and opposing counsel on notice, our ruling might be different. However, it is very doubtful whether admitting this testimony was harmful to the defendant as the witness clearly stated that the tires were not moved from the garage before the fire. The jury put a value on the tires which was less than half of what the plaintiffs contended they were worth.

■ The following charge of the court was not error for any reason assigned: "A slight overestimate by the insured will not avoid the policy. In fact, the estimate must be so plain an overvaluation, that is, so extravagant, as to negative an error of judgment and import an intention to defraud." This excerpt was assigned as error because (1) it was confusing to the jury; (2) it was misleading to the jury; (3) it excluded from the jury's consideration

a substantial part of the evidence, in that it limited their consideration solely to evidence of extravagance and excessiveness of the claim in determining whether or not there was fraud; (4) it submitted to the jury a matter of law; and (5) it was not sound as an abstract principle of law. The charge was correct so far as it went. The exception does not cover the failure to charge another or other applicable principles of law.

■ The ruling in division 4 applies to the exception to the following excerpt from the charge: "Where evidence that the insured made an excessive estimate of his loss is relied upon as proof of his fraudulent intent, the estimate should be so extravagant as to lead necessarily to the conclusion that the excess was due, not to an error of judgment, but to an intention to defraud."

■ The following excerpt from the charge was not error for any reason assigned: "Evidence, gentlemen, to establish fraud or false swearing in connection with an insurance policy must be either direct and positive or the circumstances must be strong, convincing, and preponderating. Loose testimony is not sufficient." The exceptions are (1) that it required too high a degree of proof; (2) it conflicted with the following part of the charge: "Now, where the defendants have come into court and set forth in their answers certain reasons why the policies have become void, and certain reasons why no recovery can be had thereon, then, gentlemen, as to those defenses, the burden of proof is on the defendants to show to your satisfaction by a legal preponderance of the evidence in the case that the matters set forth by them in order to avoid the policies are true. Having already defined to you what the law means by preponderance of evidence, I will not repeat it. You would not be authorized to presume fraud. It must be, as the court has charged you, proven, and the burden of proof is upon the defendants, and they must prove fraud by a preponderance of evidence— but fraud, being in itself subtle, slight circumstances may be sufficient to carry conviction of existence. While fraud is subtle in its nature and slight circumstances may be sufficient to establish fraud, fraud under the law must not be presumed;" (3) it undertook to exclude a kind of evidence not recognized by the law of Georgia as "loose testimony," and resulted in confusion to the jury; (4) it was argumentative in that it tended to lead the jury to believe that the evidence offered by the defendant in support of its defense of

fraud failed to meet the legal requirements necessary for defendant to sustain its defense; and (5) it was not sound as an abstract principle of law. The rule here is the same as where fraud in connection with an application for insurance is in issue. *National Life & Accident Insurance Co.* v. *Falks,* 57 *Ga. App.* 384 (195 S. E. 463) ; 26 C. J. 54; 33 C. J. 125; 8 Couch on Insurance, 7185. The jury can not be said to have had any understanding of the term "loose testimony" other than that of explanation of the kind of evidence which had been explained as sufficient, and distinguishing that kind of evidence from the kind which would not satisfy the mind by a preponderance. In other words, the judge meant, and the jury in all likelihood probably understood him to mean, that unconvincing, weak, and indirect proof would not be sufficient.

■ The following excerpt from the charge was not error for any reason assigned: "Each of the policies involved in these suits contains a provision permitting the insured to take out concurrent additional insurance without notice to the insurer until such notice is required. The Murphy Retreading Company was, therefore, permitted under the terms of the policies to take out additional concurrent insurance on this property without notifying any of the companies issuing the insurance that such additional insurance had been or would be taken out."

■ Ground 8 of the amended motion, not being argued or insisted on, is treated as abandoned.

■ It was not error for the court to refuse to give in charge the following request: "I charge you that if A. J. Stuart and W. F. Humphries, or either of them, has sworn falsely as to the books alleged to have been kept by Murphy Retreading Company, or as to the time when entries in said books were alleged to have been made, or as to the tickets alleged to represent moneys paid out and moneys received, such false swearing would void the policy sued on, and you must find a verdict for the defendant," for the reasons that the request omits to state that false swearing must involve a material matter, and fails to state that the false swearing referred to therein must be with intent to defraud. The policy provides in lines 1, 2, 3, 4, 5, and 6 on page 2 of the policy as follows: "This entire policy is void if the insured has concealed or misrepresented any material fact or circumstance concerning this insur-

ance or the subject-matter thereof; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss." This provision of the policy contemplates that the false swearing which will void the policy must be false swearing as to a material matter, and must be done fraudulently. False swearing is defined in Code, § 26-4003, as "wilfully, knowingly, absolutely, and falsely swearing, etc."

The contention of movant that the rulings on demurrers to the answer and amendment made the requested charge applicable under the law of the case is not well founded. The demurrer to certain parts of the answer and amended answer was overruled. The demurrer was as follows: "Plaintiffs move to strike from paragraph 8 of the answer the statement, 'That said plaintiffs have sworn falsely as to the books and records kept by said plaintiffs,' and from the amendment to defendant's answer the whole of paragraph 4, on the ground that said statements constitute no defense to this action and are irrelevant, there being no provision in the policy or attached thereto requiring plaintiffs to keep books and records or to keep them in a safe place or to make any inventory or other record of their stock and equipment or of the operation of their business." Paragraph 4 of the amendment to the answer is as follows: "Plaintiffs have both knowingly and wilfully sworn falsely in examination under oath conducted on December 1, 1938, in accordance with provisions of the insurance policy, in the following particulars: they have sworn falsely as to what books were kept by the plaintiffs, and when said books were written up; they have sworn falsely about tickets representing money received and paid out; they have sworn falsely as to receipts and disbursements of said business, and as to sales of said business; they have sworn falsely as to the inventory on hand on January 1, 1938; all of which was sworn to falsely for the purpose of defrauding defendant, when said plaintiffs knew that said books were not in fact made up currently as the transactions took place, and that said tickets were not made up currently as the transactions were alleged to have taken place, but were prepared for the purpose of defrauding this defendant subsequent to the dates of the entries reflected by said books and tickets." The overruling of this demurrer did not eliminate the issues of materiality and intention to defraud from the defense of false and fraudulent swearing.

■ There is no merit in the assignment of error contained in ground 10 of the motion.

■ The assignment of error in ground 11 is as follows: "The jury's verdict is inconsistent within itself in that the following findings being necessarily comprehended therein are irreconcilable, to wit, (a) plaintiffs' proof of loss set forth a claim showing damages of $2438.96 on equipment and $5195.27 on stock of goods. (b) The value of the equipment destroyed as found in said verdict was $1610 and the value of the stock of goods destroyed was $1652. (c) The plaintiffs did not falsely state the amount of the loss with intent to defraud the insurer. (d) The plaintiffs did not prepare false records or make false statements regarding material matters for the purpose of defrauding the insurer. The defense as to the value claimed consisted, as movant contends, of evidence of falsification of books by plaintiffs and of falsification of tickets alleged to represent purchases, upon which books and tickets plaintiffs' claim was based. Movant avers that said verdict is irreconcilable within itself because of the facts hereinabove set forth." This ground is without merit for the reason that there was opinion evidence of one witness as to the value of the property burned, which evidence was in no way dependent on the proof of loss or the books of the plaintiffs. In addition to this the jury could have considered the nature of the property and other circumstances illustrating its value. Overvaluation does not bar a recovery as a matter of law. 20 A. L. R. 1173. In the cases cited by plaintiff in error there was no opinion evidence of value. In them there was no such basis to explain the difference between the amount claimed in the proof of loss and the amount found by the jury as the loss sustained. It is true that the witness who testified as to his opinion of the value of the tools, machinery, and merchandise stated that the condition on which he agreed to testify was that he be paid debts from the recovery in the case, but the question of his credibility was solely a question for the jury, and it can not be said as a matter of law that the jury did not believe him credible and yet differed with him on his opinion of the value of the property. It would certainly be a mistake to say that every witness who gave an opinion as to value was falsifying because the jury did not make a finding in accordance with his opinion.

■ There are approximately 200 pages of evidence in this case

and it is unnecessary to set it forth to encumber the record and the books. The jury was authorized to find as it did. There was evidence which tended to show that the books and tickets were falsified, and there were explanations of the suspicious circumstances which, though they might seem less reasonable to some than to others, were not impossible. The jury saw most of the witnesses and saw fit to accept the explanations given, and we are powerless to overthrow the verdict on the general grounds of the motion.

The court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., concurs specially. Sutton, J., dissents.*

STEPHENS, P. J. I concur in the judgment of affirmance, and in all except what is contained in paragraph 1 of the opinion. I concur in the conclusion that the policy was not voided because of the existence of an incumbrance of $58 on one of the many articles of personal property claimed to be covered by the policy.

While it is provided in the policy that the entire policy shall be void "if the interest of the insured be other than unconditional and sole ownership," and while it has been held by the Supreme Court, in answer to a certified question in this case that under this clause the entire policy is void if the insured does not hold title to "a part of the property insured," it is provided in another provision of the policy, which the Supreme Court did not have in mind when it answered this question, that "Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage and during the time of such incumbrance this company shall be liable only for loss or damage to any other property insured hereunder."

The Supreme Court, in answer to the certified questions, did not hold in either answer that the so-called conditional bill of sale, or retention-of-title contract, or chattel mortgage, in this case constituted a violation of the "unconditional and sole-ownership" clause of the policy. The Supreme Court merely held that this policy constituted an entire contract; and that if the sole and unconditional ownership clause was violated as to a specific piece of property insured under the contract, the entire policy was void.

Both of the clauses of the policy above referred to must be construed together and as qualifying each other. While one clause

provides that if the interest of the insured be other than "unconditional and sole ownership," which properly construed means that if the interest of the insured in the property covered or insured by the policy is otherwise than unconditional and sole ownership, the "entire" policy, meaning the policy as covering all the property, is void, the other clause of the policy lifts from its coverage any "property insured hereunder while incumbered by a chattel mortgage." Construing these two clauses together, they mean that the property which is incumbered by a chattel mortgage is not insured or covered by the policy, but that only property not so incumbered, if described as insured in the policy, is "covered." Of course the first clause which provides for a voidance of the policy if the interest of the insured be other than "unconditional and sole ownership," means the interest of the insured in property insured under the policy. If a part of the property, otherwise insured, is lifted from the coverage of the policy because such property is incumbered with a chattel mortgage, such property is not insured under the policy, and this incumbrance on the property can not render the entire policy void.

The particular instrument which it is contended is an incumbrance on a portion of the property mentioned in the policy purports on its face to have been executed on September 3, 1937, in the County of Fulton, State of Georgia, and is signed by "Georgia Tire & Rubber Co., by A. J. Stuart, 800 DeKalb Ave., Atlanta, Ga." It appears from this instrument that the person executing it purchased from "Chandler Machinery Company" certain personal property described therein, the same being an air compressor, motor, and other personal property. The instrument recites the receipt of the property by the purchaser; that the purchaser has contracted to buy the property for a recited purchase price; that a portion of the purchase price has been paid; that the purchaser has executed described monthly notes payable to the Chandler Machinery Company. The instrument further provides that the title to the property shall remain in the seller, Chandler Machinery Company, until the notes or any renewals thereof are paid; that if the property is lost, damaged, or destroyed, the purchaser shall not be entitled to an abatement of the purchase price; that, on default in the payment of any one of the notes referred to, the other notes, at the seller's option, shall become due and "collectible;" that the

seller may, on a failure of the purchaser to make any payment due under the contract, enter on the premises where the property is located and repossess the property, and shall retain as rent and liquidated damages any money which may have already been paid by the purchaser under the terms of the contract, but that this right to repossess the property on the condition named shall not "interfere with any other remedy at law which the said Chandler Machinery Company may have, but to be cumulative only."

Whatever may be the character of this instrument, whether it is a conditional sale or otherwise, it is more than a mere sale of the property on condition that the purchaser pay the agreed purchase price. It provides that the notes given in accordance with its terms are, when unpaid, "collectible." There is also retained to the seller some remedy other than the mere repossession of the property on failure of the purchaser to pay. The instrument contains a right in the seller to force the collection of the purchase money recited therein. It does not permit the purchaser to refuse to complete the sale, and refuse to purchase the property by a failure or refusal to pay the recited purchase money. The instrument is therefore more than a mere conditional sale. It is one in the nature of a security for the payment of the purchase money of the property. Whatever may be the denomination of this instrument in jurisdictions other than Georgia, whether it is a conditional bill of sale, a mortgage, or otherwise, under the Georgia law this instrument is not a mortgage. It is an instrument which is denominated as a conditional-sale contract or a retention-title contract. Under the Georgia law a mortgage passes no title from the debtor to the creditor, but only creates a lien on the property. Code § 67-101. Since, under this instrument, the title to the property is lodged in the seller who is the creditor, for the security of the debt, and is not in the purchaser who is the debtor, the creditor has title to the property as security for a debt, and does not have a mere lien thereon as in the case of a mortgage under the Georgia law.

The insurance policy under consideration here is on personal property located in North Carolina. The policy purports to have been issued in North Carolina. It is to be construed according to the laws of North Carolina, and the rights of the parties are determinable under the laws of that State. Whether or not the appli-

cable law of that State has been pleaded in the present case, which is a suit on this policy in a court in the State of Georgia, is immaterial, since it is conceded in the briefs by counsel for both sides that the policy must be construed in accordance with the laws of North Carolina. The defendant, by plea as amended, raises the question as to the invalidity of the policy by reason of the existence of this conditional bill of sale on a portion of the insured property. The court sustained the demurrer to the plea as amended, and there is presented for determination the correctness of this ruling. As respects the matter under these pleadings the defendant can not complain of any failure of the plaintiffs to plead the North Carolina law. It appears on the face of the policy that the policy is a North Carolina contract. It follows that the North Carolina law is the applicable law in determining the meaning of this contract. Counsel for the defendant concede that the policy should be construed in accordance with North Carolina law.

It is proper therefore, in determining what is a "chattel mortgage," as used in this policy in the clause which provides that the company shall not be liable for damages to property insured under the policy while the property is "incumbered by a chattel mortgage," to look to the laws of North Carolina for a determination of the nature of the instrument in question which was executed in Georgia, under the laws of Georgia, on the sale of personal property by the Chandler Machinery Company to Georgia Tire & Rubber Company. It is insisted by counsel for plaintiff in error in their brief as follows: "The contract [meaning the policy of fire insurance involved in this case] will, of course, be construed in accordance with the law of North Carolina. Two cases seem to us to settle the law of that State on this point." Counsel then cite and rely on the cases of Weddington v. Piedmont Fire Insurance Co., 141 N. C. 234 (54 S. E. 271, 8 Ann. Cas. 497), and Lancaster v. Southern Ins. Co., 153 N. C. 285 (69 S. E. 214, 138 Am. St. R. 665). I can not concur with counsel that either of these cases sustains their contention. In the Lancaster case the court had under consideration a contract respecting the sale of personal property similar in every essential element to the sale contract here under consideration. Under the contract before the North Carolina court in that case the vendor of personal property had sold it and delivered possession to the purchaser, had taken notes for the

purchase money, had retained title as security, and the contract had been properly registered according to law. The court recited that, under the law of North Carolina, under such contract of sale of personalty as there described a loss by fire or by other adventitious cause fell on the purchaser. The court held: "The claim of the vendor, in this instance, was only an incumbrance in the nature of a chattel mortgage to secure the purchase money, and, on the facts, the stipulation as to the nonexistence of such an incumbrance has been violated." The policy in that case, as does not the policy in the case now before this court, provided that the *entire* policy should be void if the interest of the insured was other than "unconditional and sole ownership," or "if the subject of the insurance be personal property and be or become incumbered by a chattel mortgage." Under the provisions of the policy in that case, the existence on the property insured of a "chattel mortgage" voided the entire policy. Whereas, under the provisions of the policy in the case now before this court the *entire* policy is not voided by the existence of a chattel mortgage on a *portion* of the property.

Whether or not the rights of the parties under the sale contract of personal property located in Georgia, between Chandler Machinery Company as seller and Georgia Tire & Rubber Company as purchaser, which was executed in Georgia, are, where the property has been moved into North Carolina, as in this case, determinable under the laws of Georgia or under the laws of North Carolina, there is no question here presented as to the rights of the parties under this sale contract. The question is as to the nature and character of this instrument; whether or not, under the laws of North Carolina, it constitutes a "chattel mortgage" in the sense in which the term "chattel mortgage" is used in the insurance policy in this case, the construction of which is to be governed and determined by the laws of North Carolina. Under the laws of North Carolina, as was held in the Lancaster case, this conditional-sale agreement which was executed in Georgia was a *chattel mortgage*. Therefore, if such sale agreement, which was executed in Georgia on property located in Georgia but which was afterwards carried into North Carolina, possessed any validity in North Carolina, and in any way affected the property described in the agreement after the property had been carried into North Carolina,

it was only an incumbrance on the property constituting, as defined by the courts of North Carolina, a "chattel mortgage" on only a portion of the property mentioned in the policy, and, under the terms of the policy, by reason of this incumbrance on this particular piece of property, the coverage of the policy was lifted from this particular property only. There is no provision of the policy which, by virtue of the existence of such incumbrance on a portion of the property, voids the entire policy, but the policy states that all other property except such as is incumbered by the chattel mortgage is covered by the policy.

While in the Lancaster case it was stated in a well-considered portion of the opinion that the conditional-sale agreement therein referred to, the contents of which have been stated above, was not such an instrument as rendered the interest of the insured in the property insured and covered by this conditional-sale contract, other than "unconditional and sole ownership," this seems to be obiter. The conclusion of that court, however, may safely be relied on as authoritative of the law of North Carolina in this respect. The court, in the opinion in that case, further stated as follows: "In North Carolina, however, it is established in a case like the present, that when a bargainor sells goods, taking notes for the purchase-price, retaining the title as security for the purchase money, and delivers possession, that if the goods are destroyed by fire, the obligation to pay the notes is absolute and the loss must fall on the vendee. Tufts v. Griffin, 107 N. C. p. 47 [12 S. E. 68, 10 L. R. A. 526, 22 Am. St. R. 863]. From this we think it follows that . . the vendee under the fact existent here, is the unconditional and sole owner of the goods, within the meaning of the contract and there has been no breach of same in this respect. Such a stipulation refers to the 'quality of an estate, and that it is not held jointly with others.'" See Roberts v. American Alliance Co., 212 N. C. 1 (192 S. E. 873, 113 A. L. R. 310).

Weddington v. Piedmont Fire Insurance Co., supra, relied on by counsel for the plaintiff in error, is authority for the proposition that where personal property insured under a fire policy is incumbered by a chattel mortgage the policy is void where the policy contains an express provision that it is void, unless otherwise provided by agreement or indorsement, if the property becomes incumbered with a chattel mortgage. There is no such provision in the policy

in the case now before this court. Under the provisions of the policy in this case only the particular piece of property incumbered with a chattel mortgage is lifted from the coverage of the policy and the insurance on such property is, by reason of such incumbrance, void.

It is insisted by counsel for the defendants in error in the case now before this court that the sale contract involved in this case, which was executed in Georgia on personal property at the time within this State, which property was afterward carried into North Carolina, had no force and effect as a valid contract in North Carolina, and therefore constituted no incumbrance upon the property, by reason of the alleged fact that the contract had not been recorded in North Carolina as required by the statute of that State for the recordation of contracts of this character. In support of counsel's contention reliance is had on Brem v. Lockhart, 93 N. C. 191. The case relied on seems to relate to the rights of purchasers from the conditional vendee where the conditional-sale or mortgage contract has not been recorded. It is immaterial whether or not this conditional-sale contract was valid, and whether or not under the laws of North Carolina it constituted an incumbrance on the property while the property was in North Carolina. If it were not valid, of course there was no incumbrance by mortgage which could in any way affect the insurance. If it were valid it, as above demonstrated, affected the insurance only in so far as respected the particular property referred to in the conditional-sale contract.

I am of the opinion that under the North Carolina law, the conditional-sale contract in this case on the personal property which was in North Carolina when it was destroyed by fire did not render the interest of the insured under the policy in this property, or in any of the property described as insured under the policy, other than "unconditional and sole ownership." I am also of the opinion that, under the North Carolina law, this conditional-sale contract, whatever it may be under the Georgia law, was a chattel mortgage on this property, and operated only to invalidate the insurance as respected the particular piece of property affected by this sale contract.

Whether or not the verdict, in so far as it found a sum for the loss of the property covered by this chattel mortgage, was excessive

it is not necessary to determine. No such insistence is made by counsel for the company, and the defense interposed by counsel for the company, in so far as the existence of this alleged incumbrance invalidated the insurance, was that it operated to invalidate the *entire* policy.

There is evidence tending to establish that A. J. Stuart and W. F. Humphries comprised Murphy Retreading Company, the insured under the policy. There is therefore no merit in the contention of the insurance company that by reason of Humphries' interest in any of the property insured the interest of the insured was other than "unconditional and sole ownership."

I am of the opinion that the court did not err in sustaining the demurrer to the plea as amended in which it was alleged that the incumbrance on a portion of the property invalidated the entire policy. I therefore concur in the judgment of affirmance.

SUTTON, J., dissenting. I think the judgment of the trial court should be reversed, under the facts and the law applicable to this case. This was so held by the Supreme Court in 191 *Ga.* 745 (supra), in answer to a certified question from this court, and it was said that "a breach of this provision as to part of the personal property insured avoided the whole policy, and there could be no recovery for the destruction of the other personal property as to which the insured was sole and unconditional owner." The policy provided: "This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, if the interest of the insured be other than unconditional and sole ownership." There was an outstanding bill of sale to a part of the property insured with a balance of $58 unpaid at the time of the fire.

After the above-mentioned answer of the Supreme Court this court certified to it the following question: "Does the answer of the Supreme Court to the question propounded by this court in this case, Liverpool & London & Globe Insurance Company *v.* Stuart et al. (No. 13474), preclude this court from passing upon the question as to whether an amount due under a retention-of-title contract on a part of the property insured at the time the policy was issued was of sufficient materiality to void the policy?" The Supreme Court in its answer to this last question merely holds that its former decision does not preclude this court from passing upon the question as to whether an amount due under a retention-

of-title contract on a part of the property insured at the time the policy was issued was of sufficient materiality to void the policy. See s. c. 193 *Ga.* 437 (supra). The contract being entire and not divisible, the bill of sale would render it void, unless the amount of $58 is too small and insignificant in comparison with the total amount of the insurance for the law to notice it. $58 is a substantial amount and in my opinion would not, under the facts of this case, come within the doctrine of de minimis non curat lex. The parties contracted in respect to the interest of the insured being unconditional and sole ownership, and if it be true that at the time of the fire there was an outstanding bill of sale to a part of the property insured with a balance of $58 unpaid, I do not think that it can be said as a matter of law that the $58 was too small and insignificant an amount to be noticed by a court of law. Therefore, I think that the trial court erred in sustaining the demurrer to that portion of the defendant's answer which set up as a defense that the policy was void by reason of the bill of sale to part of the insured property on which there was an unpaid balance of $58 at the time of the fire, and erred in overruling the motion for new trial.

I dissent from divisions 1 and 12 of the opinion and the rulings therein, and from the rulings in headnotes 1 and 12. I concur in the rulings in divisions 2 to 11, inclusive, of the opinion and the headnotes corresponding thereto.